# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| Darnell Pate, | : | Case No. 1:09CV1256 |
| | : | |
| Petitioner | : | Judge John R. Adams |
| | : | |
| v. | : | Magistrate Judge David S. Perelman |
| | : | |
| Timothy Brunsman, Warden, | : | |
| | : | **REPORT AND RECOMMENDED** |
| | : | **DECISION** |
| Respondent | : | |

In this *pro se* action in habeas corpus, 28 U.S.C. §2254, petitioner challenges the constitutionality of his March 12, 2007 convictions pursuant to a bench trial on one count of rape and one count of kidnapping, upon which he was sentenced to ten years incarceration on each count, and one count of gross sexual imposition, upon which he was sentenced to eighteen months in prison, with all sentences to run concurrently.[1]  The court also ordered an additional three years of post-release control, and after a sexual predator hearing, adjudicated petitioner to be a sexually oriented offender.

Petitioner appealed his convictions to the Ohio Eighth District Court of Appeals alleging five assignments of error:

---

[1]Petitioner was originally charged with additional counts of rape and kidnapping, with specifications, but he was acquitted on those charges.

1

I.    The State failed to present sufficient evidence to sustain Appellant's convictions.

II.   The Appellant's convictions are against the manifest weight of the evidence.

III.  The trial court erred when it denied Appellant his right to a speedy trial.

IV.   The court's imposition of Appellant's sentences is not supported by the record.  Accordingly, the sentence is contrary to law and violates Appellant's right to due process under the Fifth and Fourteenth Amendments to the United States Constitution and Section 16 of Article One of the Ohio Constitution.

V.    The trial court erred in finding that the charges of rape and kidnapping were separate offenses.

On June 16, 2008 the appellate court affirmed the convictions and sentences.

In its opinion, the court summarized the facts in petitioner's case as follows:

At trial, the state called seven witnesses, including the 13-year-old female victim, her mother, her brother, her paternal grandfather, a forensics expert, the assigned social worker, and the detective who investigated the case.

The following relevant facts were adduced at trial.  Sometime prior to July 2005, the family, including appellant, moved to a house on East 76th Street in Cleveland, the victim testified that on the afternoon of July 2, 2005, she was alone in the house with appellant when he asked her to "wrestle" and to pick a room in which to do it. She had seen appellant wrestle with her brothers before and thought he was being playful.  The victim testified she went with appellant to her mother's room and began to wrestle with him on the floor.  He began kissing her neck and breasts, then he got up and shut the windows and locked the doors to the house.  The victim testified she ran upstairs to her brother's bedroom, and appellant followed her.

The victim further testified that while she was in the upstairs bedroom, appellant demanded that she take off her clothes and, out of fear, she did what he said.  Appellant removed his pants, held his penis, and then inserted it into her vagina.  The doorbell rang, and appellant got up and went downstairs.  The victim testified that she

2

noticed white, "slimy stuff" on and near her vagina and between her legs, so she shut herself in the bathroom by securing the bathroom door with an extension cord, then proceeded to take a bath.

The victim then testified that appellant returned upstairs to tell her that no one was at the door, and then he went back downstairs. She bathed, changed into clean clothes and, because she was afraid to stay in the house with appellant, she went to a neighbor's house until her mother returned home.

The victim testified that on July 3, she told her mother what appellant had done to her, stating that he had "humped her." Her mother confronted appellant, who denied everything. The victim testified that her mother took her to the hospital to determine if she had been sexually active. Neither the victim nor her mother told the staff at the hospital of the alleged rape. The victim testified that later that afternoon, she sent a text message to her father stating that appellant had sexually assaulted her.

The victim further testified that on July 4, four policemen arrived at her home to question her about the alleged assault, but she did not tell them what happened because she was afraid she had done something wrong. Also on that date, Deborah Crawford, a social worker, arrived at her home. The victim testified that she told Crawford that appellant had raped her. After her interview with Crawford, the victim went with her mother back to the hospital and completed a rape kit.

The victim's mother testified that on July 3rd, her daughter told her that appellant had "humped her." She confronted him, and he denied he had touched the victim. When appellant refused to go to the hospital with her and her daughter, she ordered him to leave the house.

The mother further testified that, on their first visit to the hospital, she asked the staff to check her daughter to determine if she had been sexually active, but they refused to do this type of examination. She also testified that neither she nor her daughter told the hospital staff of any sexual abuse. She further testified that on July 4th, four policemen arrived at their home to question her daughter, but that her daughter refused to tell them what appellant had done to her.

Deborah Crawford testified that the victim told her that appellant had raped her. She testified she instructed the victim to gather the clothing she had been wearing at the time of the incident and go to

3

the hospital to have a rape kit performed.  Crawford testified that the victim told her that appellant had tried to rape her in May 2004, when the family was living on Manor Road.

Christopher Smith, the stat's forensics expert, testified that he evaluated the rape kit performed on the victim.  The results of the tests indicated that one sperm cell was detected in the vaginal swab, but no other trace of saliva, blood, or semen was found in the samples or on the victim's underwear.

At the close of the state's case, defense counsel made a Crim.R. 29 motion, which the court denied.  The defense did not present a case, but renewed its Crim.R. 29 motion.  The court denied the motion.

Petitioner failed to file a timely appeal of the foregoing decision to the Ohio Supreme Court, but his *pro se* motion for delayed appeal filed with that court on September 15, 2008 was granted on October 29, 2008, the court having decided to address five propositions of law which were identical to those raised to the lower appellate court.  On February 18, 2009 the state supreme court denied petitioner leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

On June 2, 2009, the petitioner filed the instant petition, in which he raises the following four claims for relief:

**A.  GROUND ONE:**  State failed to present sufficient evidence to sustain conviction.

**Supporting FACTS:** No force was used, no threats made, no DNA evidence, etc.

**B.  GROUND TWO:** Conviction against the manifest weight of the evidence.

**Supporting FACTS:** Lack of evidence, no threats or use of force.

**C.  GROUND THREE:** Denial of a fast and speedy trial.

4

       **Supporting FACTS:** Appellant's right to a fast and speedy trial as supported by the record.

    **D.   GROUND FOUR:** Sentence not supported by the record.

       **Supporting FACTS:** Appellant's rights to due process under the 5th and 14th Amendments to the U.S. Constitution.

The provisions of the Antiterrorism and Effective Death Penalty Act, "AEDPA," Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 26, 1996) are controlling herein as the instant petition was filed after the Act's effective date.  <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997).[2]

The role of a federal district court in habeas corpus is set forth in Title 28 U.S.C. § 2254 (d) which provides:

    (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has held that the clauses "contrary to" and "unreasonable application of" as found in §2254(d)(1) have independent meanings;  <u>Williams v. Taylor</u>, 529 U.S. 420 (2000), with the state court adjudication being "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant

---

[2]There are no issues of untimeliness or procedural default in this case.

Supreme Court precedent and arrives at a result opposite to [that of the Supreme Court];" and with the state court adjudication involving an "unreasonable application of clearly established Federal law, as determined by the Supreme Court" "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "if the state court either unreasonably extends a legal principal from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principal to a new context where it should not apply or unreasonably refuses to extend that principal to a new context where it should apply."  120 S.Ct. at 1519-1520.    In deciphering the "unreasonable application" clause this Court must inquire as to whether "the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521.  Even if the state court decision resulted in an incorrect application of federal law, if that decision is reasonable it will stand.  Id.  See, Machacek v. Hofbauer, 213 F.3d 947, 953 (6th Cir. 2000).

Petitioner's first two claims for relief will be considered together as they each challenge whether there was sufficient evidence to convict petitioner at trial.

Specifically, petitioner argues in his first claim for relief that the evidence relied upon to convict him at trial was constitutionally insufficient. In petitioner's second claim for relief he argues that his convictions were against the manifest weight of the evidence.

Considering the latter first, to be entitled to relief in federal habeas corpus a petitioner must establish that there has been infringement of a right guaranteed under the United States Constitution. Clemmons v. Sowders, 34 F.3d 352, 357 (6th Cir. 1994).  A violation of state law is not cognizable in federal habeas corpus unless such error amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution.  See, Floyd v. Alexander, 148 F.3d 615, 619 (6th Cir.), cert. denied, 525 U.S. 1025 (1998); Serra v.  Michigan

6

Dep't of Corrections, 4 F.3d 1348, 1354 (6th Cir.  1993), cert. denied, 510 U.S. 1201 (1994).  It is the obligation of this Court to accept as valid a state court's interpretation of the statutes and rules of practice of that state.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Accord, Duffel v. Dutton, 785 F.2d 131, 133 (6th Cir. 1986).  "Errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding."  Seymour v.  Walker, 224 F.3d 542 (6th Cir.  2000), cert. denied, 532 U.S. 989 (2001) (Internal quotations and citations omitted.).

A claim that a conviction was against the manifest weight of the evidence presents a question of state law and does not raise a question of violation of a federal constitutional right.  Tibbs v. Florida, 457 U.S. 31, 47 (1982); Johnson v. Havener, 534 F.2d 1232, 1234 (6th Cir. 1976).  It follows that petitioner's second claim for relief is not cognizable in habeas corpus.

Turning to petitioner's first claim for relief, wherein he challenges the sufficiency of the evidence relied upon to convict him at trial, the standard for addressing an argument that a conviction is not supported by sufficient evidence was enunciated in Jackson v. Virginia, 443 U.S. 307, 319 (1979), as follows: "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Accord, McKenzie v. Smith, 326 F.3d 721, 727 (6th Cir. 2003); Matthews v. Abramajtys, 319 F.3d 780, 788 (6th Cir. 2003).  In reaching its determination as to the sufficiency of the evidence this Court may not substitute its determination of guilt for that of the factfinder and may not weigh the credibility of the witnesses.  Herrera v. Collins, 506 U.S. 390, 401-402 (1993); Jackson v. Virginia, 443 U.S. at 319, n.13; Brown v. Davis, 752 F.2d 1142 (6th Cir. 1985).

That standard has been modified somewhat by §2254(d) in that questions of sufficiency of the evidence are mixed questions of law and fact upon which a writ may be granted only if the

7

adjudication of the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," §2254(d)(1), or was based upon "an unreasonable determination of the facts in light of the evidence presented" at petitioner's trial, §2254(d)(2).  Starr v. Mitchell, unreported, Case No. 98-4541, 2000 U.S.App. LEXIS 25646,*9-*10 (6th Cir. October 6, 2000).

The state appellate court reviewed petitioner's claims that he was convicted without sufficient proof and held in pertinent part:

> Appellant argues that the state failed to present evidence of the element of force on the charges of rape and gross sexual imposition; and evidence of force, threat, or deception on the charge of kidnapping.  He also argues that the verdicts were against the manifest weight of the evidence on all three charges.
>
> Whether the evidence is legally sufficient to sustain a verdict is a question of law.  *State v. Robinson,* (1955), 162 Ohio St. 486, 124 N.E.2d 148.  A conviction based on legally insufficient evidence constitutes a denial of due process.  *Tibbs v. Florida* (1982), 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652.  Sufficiency is a test of adequacy.  *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541.  Where there is substantial evidence upon which the trier of fact has based its verdict, a reviewing court abuses its discretion in substituting its judgment for that of the jury as to the weight and sufficiency of the evidence.  *State v. Nicely* (1988), 39 Ohio St.3d 147, 529 N.E.2d 1236.  The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine.  *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212.
>
> On review, the appellate court must determine, after viewing the evidence in a light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.  *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.
>
> Sufficiency of the evidence is subject to a different standard of review than is manifest weight of the evidence.  Article IV, Section 3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact-finder.  Thus,

8

when a claim is assigned concerning the manifest weight of the evidence, an appellate court "has the authority and the duty to weigh the evidence and determine whether the findings of *** the trier of fact were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial."  *State ex rel. Squire v. Cleveland* (1948), 150 Ohio St. 303, 345, 82 N.E.2d 709.

The United States Supreme Court recognized the distinctions in considering a claim based upon the manifest weight as opposed to sufficiency of that evidence.  The court held in *Tibbs*, supra, that, unlike a reversal based upon the insufficiency of the evidence, an appellate court's disagreement with the jurors' weighing of the evidence does not require special deference accorded verdicts of acquittal, i.e., invocation of the double jeopardy clause as a bar to relitigation. Id. at 43.  Upon application of the standards enunciated in *Tibbs*, the court in *State v. Martin* (1983), 20 Ohio App.3d 172, 485 N.E.2d 717, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence.

The *Martin* court stated:  "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  Id.

Appellant was convicted of rape and gross sexual imposition, in violation of R.C. 2907.02(A)(2 and R.C. 2907.05(A)(1), respectively.  An essential element of these charges is a show of "force or threat of force."  The state presented the victim's testimony to show that she was forced to submit to appellant's demands.  She testified that she took off her clothes because she was afraid of him.  She testified that when appellant got up to lock the doors and shut the windows, she ran from him.  The victim was 13 years old; appellant was a 25-year-old man and her mother's boyfriend at the time.  Despite the victim's testimony that she did not consider appellant a father figure or a disciplinarian, there was no testimony that she considered him her peer or her equal.

Viewed in the light most favorable to the prosecution, the state produced sufficient evidence on both charges that the victim was forced to submit to sexual conduct with appellant.

Appellant also argues that the verdicts were against the manifest weight of the evidence.  He contends that there was "a complete lack

9

of physical evidence" and suggests that the sexual act between him and the girl, if it occurred at all, was consensual.  He also argues that the victim's failure to report the incident immediately to her mother or to the police makes her testimony so inconsistent that any conviction is against the manifest weight of the evidence. We disagree.

Smith testified that at least one sperm head was found in the vaginal swab taken from the victim.  No other explanation was given for this positive result for sexual contact.    Also, the court heard all the evidence, including alleged inconsistencies in the victim's testimony.  Appellant argues that the victim's explanation of the events, including such descriptions as "he messed with me," "he humped me," and "he raped me," renders her testimony unreliable. We do not find that appellant's argument supports reversal by this court.  These terms are not so unusual or unprecedented when used to describe sexual contact, and we defer to the trial court's ability to weigh the evidence and the credibility of the witnesses to reach its verdict.

Furthermore, we are not persuaded by appellant's argument that the victim was lying simply because she was unable to tell the police what allegedly happened.  She testified that she was afraid she had done something wrong, a common response from children who experience abuse.  She was also confronted, unannounced, by four male police officers at her front door.  The testimony from the victim and the female social worker, whose job it is to deal with cases of abuse, were consistent with the story the victim told her mother the day before the police arrived at her house.  We do not find that the trial court lost its way in reaching guilty verdicts on the charges of rape and gross sexual imposition.

With respect to the charge of kidnapping, appellant argues that the state failed to present evidence of "force, threat or deception" sufficient to allow the trial court to return a guilty verdict on Count Four.  We disagree.

The state must only present evidence on one of the three elements: force, threat, or deception.  Here, the state produced evidence that appellant deceived the victim by suggesting that they "wrestle," not that they have sexual intercourse.  In addition, "[f]orce need not be overt and physically brutal, but can be subtle and psychological." *State v. Eskridge* (1988), 38 Ohio St.3d 56, 526 N.E.2d 304.

The victim testified that she was afraid of appellant; therefore, she

10

took off her clothes when he demanded it. She testified that she felt threatened by him and so she acquiesced. See *State v. Fowler* (1985), 27 Ohio App.3d 149, 27 Ohio B. 182, 500 N.E.2d 390 (stepfather convicted of raping his 14-year-old stepdaughter where court found defendant held a position of authority over her that did not require any explicit threats or displays of force).

We also find that the state produced sufficient evidence that appellant "restrained [the victim's] liberty." The testimony of the victim showed that appellant locked the doors and shut the windows, and then followed her upstairs, at which time he got on top of her for the purpose of engaging in sexual activity. The lower court did not err when it denied appellant's Crim.R. 29 motions.

We also find that the court's verdict was not against he manifest weight of the evidence. The court heard the victim's testimony and found it credible. She testified that she thought appellant wanted to wrestle with her, the way he sometimes did with her brothers. She testified that she ran away from appellant when he got up to lock the doors and windows. She testified that she did what appellant told her to do because she was afraid of him. Finally, she testified that she attempted to "lock" herself in the bathroom using an extension cord as soon as appellant went downstairs to answer the door.

We do not believe that the court lost its way in reaching a guilty verdict on the charge of kidnapping. Clearly, the court found the victim's testimony credible as it related to appellant's forcible restraint on her liberty.

We find that the state presented sufficient evidence on the charges of rape, kidnapping, and gross sexual imposition to support appellant's convictions, and it properly denied appellant's Crim.R. 29 motions. We also find that the court did not lose its way in returning guilty verdicts on the three charges; therefore, we overruled appellant's first and second assignments of error.

In finding the evidence sufficient to prove the elements of the crimes charged the state court relied heavily on state authorities, with reference to the proper standard to be applied as defined by federal authorities, arriving at a decision which was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, nor was the decision based upon an unreasonable determination of the facts in light

11

of the evidence presented.  That is particularly so in light of the victim's testimony that she was forced and deceived into submitting to sexual conduct with petitioner.  Consequently, petitioner's first and second claims for relief are without merit.

In his third claim for relief the petitioner alleges that he was denied his constitutional right to a speedy trial.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to a speedy trial, the violation of which can only be found upon determination of the length of the delay in bringing the defendant to trial, the reasons for the delay, whether the defendant asserted the right, and the prejudice to the defendant by reason of the delay.  Doggett v. United States, 505 U.S. 647, 651 (1992); Barker v. Wingo, 407 U.S. 514, 530 (1972);  United States v. Robinson, 455 F.3d 602, 607 (6th Cir. 2006), cert. denied, 127 S. Ct. 1338 (2007); Maples v. Stegall, 427 F.3d 1020, 1025 (6th Cir. 2005);  United States v. Schreane, 331 F.3d 548, 553 (6th Cir.), cert. denied, 124 S.Ct. 448 (2003).  While the factors are related and no one factor is determinative, Schreane, supra at 553, if the length of the delay is excessive, prejudice to the defendant may be presumed, Doggett, supra at 655-56.  In fact, length of delay is the threshold factor, the other factors need not be considered if the delay is not deemed sufficiently long.  Barker, supra at 530.  A one-year delay in bringing a defendant to trial is generally found to be presumptively prejudicial.  Doggett, supra at 652 n.1.  On the other hand, a delay of five months is not "per se excessive under the Sixth Amendment."  United States v. Howard, 218 F.3d 556, 564 (6th Cir. 2000), citing United States v. White, 985 F.2d 271, 275 (6th Cir. 1993) (a six and one-half month delay was not sufficiently long to be deemed prejudicial); and United States v. Holyfield, 802 F.2d 846 (6th Cir. 1986) (a five month delay was constitutionally permissible).  See also, United States v. Cope, 312 F.3d 757, 776-77 (6th Cir.  2002) ( a delay of eight months and three weeks was

not found to be a presumptively prejudicial delay).

In rejecting petitioner's claim of denial of his right to a speedy trial, the state appellate court

held in pertinent part as follows:

> In his third assignment of error, appellant argues that the court erred by not dismissing his case on the basis of a speedy trial violation. Appellant filed a pro se motion to dismiss on May 8, 2006, claiming that the time the state had in which to bring him to trial had expired under R.C. 2945.71.  We disagree.
>
> The Sixth and Fourteenth Amendments to the United States Constitution, as well as Section 10, Article I of the Ohio Constitution, guarantee a criminal defendant the right to a speedy trial by the state.  *State v. O'Brien*, (1987), 34 Ohio St.3d 7, 516 N.E.2d 218.  In *Barker v. Wingo* (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, the United States Supreme Court declared that, with regard to fixing a time frame for speedy trials, "[t]he States *** are free to prescribe a reasonable period consistent with constitutional standards ***."  To that end, the Ohio General Assembly enacted R.C. 2945.71 in order to comply with the *Barker* decision.  See, also, *State v. Lewis* (1990), 70 Ohio App.3d 624, 591 N.E.2d 854, 8 Anderson's Ohio App. Cas. 185.
>
> It is well established that the Ohio speedy trial statute constitutes a rational effort to enforce the constitutional right to a public speedy trial of an accused charged with the commission of a felony or misdemeanor and shall be strictly enforced by the courts of this state.  *State v. Pachay* (1980), 64 Ohio St.2d 218, 416 N.E.2d 589.
>
> Once the statutory limit has expired, the defendant has established a prima facie case for dismissal.  *State v. Howard* (1992), 79 Ohio App.3d 705, 607 N.E.2d 1121.  At that point, the burden shifts to the state to demonstrate that sufficient time was tolled pursuant to R.C. 2945.72.  *State v. Geraldo* (1983), 13 Ohio App.3d 27, 13 Ohio B. 29, 468 N.E.2d 328.
>
> We agree with the state that, pursuant to R.C. 2945.71, the statutory limit had not expired.  This determination is based on a calculation of the days from appellant's arrest on January 13, 2006, to his trial on March 7, 2007, including time tolled for the numerous continuances he requested.  The docket reflects approximately 16 continuances for the purpose of discovery, change in counsel, and pretrial and trial date changes.  "The time [in which the state must

13

bring a defendant to trial] may be tolled by certain events delineated in R.C. 2945.72(E) and (H), including continuances granted as a result of defense motions and any reasonable continuance granted other than upon the request of the accused." *State v. Taylor,* 98 Ohio St.3d 27, 2002 Ohio 7017, 781 N.E.2d 72. Additionally, appellant's motion to dismiss, as well as his failure to respond to the state's discovery request, toll the time against him.

If the court charges these numerous requests for continuances to appellant, the state was well within its 270-day limit in bringing him to trial; however, a defendant may successfully challenge a violation of his speedy trial rights on constitutional, grounds. In *Barker,* supra, the United States Supreme Court established certain factors which, when analyzed, aid the court in determining whether there has been a constitutional violation of a defendant's speedy trial rights. These four factors are the length of delay, the reason for the delay, the assertion by the defendant of his right, and the amount of prejudice to the defendant. Id.

The first factor, the length of the delay, is a "'triggering mechanism,' determining the necessity of inquiry into the other factors. *** [O]ne year is generally considered enough." *State v. Triplett,* 78 Ohio St.3d 566, 1997 Ohio 182, 679 N.E.2d 290. In this case, a delay of 416 days between arrest and trial is sufficient to trigger an inquiry into the remaining factors in *Barker.*

We find that it is both the second and fourth factors that cut against appellant. A review of the docket shows that the reason for the lengthy delay until trial was a result of appellant's own actions. He made numerous requests for continuances of pretrial and trial dates; he changed attorneys at least twice; and he failed to respond to the state's discovery requests. What is particularly notable in this case is that even after appellant moved to dismiss his case for a speedy trial violation on May 8, 2006, he continued to request continuances of his trial date. He cannot now complain that the  state or the court below failed to preserve his constitutional rights under the Sixth and Fourteenth Amendments.

Finally, we reject appellant's argument that the 20-month delay between the alleged crime and the trial caused him prejudice. The only eyewitness to the alleged crimes, with the exception of appellant himself, was the victim. The rape kit results were documented within two days of the alleged sexual abuse. The testimony of the social worker and the police detective was bolstered by the notes each took during their interviews with the victim.

14

>We find that the court did not err in failing to grant appellant's motion to dismiss for speedy trial violation; therefore, we overrule appellant's third assignment of error.

The foregoing decision by the state appellate court that petitioner's constitutional right to a speedy trial was not violated, neither resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, nor was the decision based upon an unreasonable determination of the facts in light of the evidence presented, particularly in light of the evidence that it was he who requested numerous continuances, changed attorneys several times, and failed to respond to discovery requests, contributing to the delays in the trial date.   Accordingly, petitioner's third claim for relief is without merit.

In his final claim for relief, the petitioner argues that his sentence was not supported by the facts in the record at trial.

As this Court stated previously herein, in order to succeed with a claim for relief in federal habeas corpus a petitioner must establish that there has been infringement of a right guaranteed under the United States Constitution.  Clemmons v. Sowders, supra at 357.  A violation of state law is only cognizable in federal habeas corpus if it rises to the level of a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution.  See, Floyd v. Alexander, supra at 619;  Serra v. Michigan Dep't of Corrections, supra at 1354.  It is the obligation of this Court to accept as valid a state court's interpretation of the statutes and rules of practice of that state, including state sentencing laws.  Estelle v. McGuire, supra at 67-68.[3]  Accord,

---

[3]Petitioner's claim for relief invokes only her due process rights and not the Eighth Amendment prohibition against cruel and unusual punishment.

15

Howard v. White, supra at 53.

That having been said, it is also true that state sentencing procedures, just as criminal trials, must satisfy the requirements of due process. Gardner v. Florida, 430 U.S. 349, 358 (1977). Violations of due process could be shown in cases in which a sentencing judge relied on "materially false or unreliable information in sentencing a defendant," while at the same time denying the defendant an opportunity to rebut such information. Stewart v. Erwin, 503 F.3d 488, 495 (6ᵗʰ Cir. 2007) (citing numerous cases, including Townsend v. Burke, 334 U.S. 736, 741 (1948), United States v. Tucker, 404 U.S. 443, 447 (1972), and United States v. Taylor, 768 F.2d 114, 121 (6ᵗʰ Cir. 1985)).

The state appellate court rejected petitioner's challenges to his sentencing on direct appeal holding in pertinent part:

> In his fourth assignment of error, appellant argues that his sentence was contrary to law because the court sentenced him to the maximum penalty. Specifically, he argues that he "never exercised abuse, cruelty, he never threatened [the victim] ***, and he never injured her or left traceable marks on her body ***." (See appellant's brief, page 16.) We are not persuaded by these assertions in light of appellant's rape and kidnapping convictions.
>
> R.C. 2953.08(A)(4) states: "(A) In addition to any other right to appeal and except as provided in division (D) of this section, a defendant who is convicted of or pleads guilty to a felony may appeal as a matter of right the sentence imposed upon the defendant on one of the following grounds: ***(4) The sentence is contrary to law."
>
> R.C. 2953.08(G) states "(2) The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.
>
> "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for re-

16

sentencing.  The appellate court's standard for review is not whether the sentencing court abused its discretion.  The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following: (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (D)(2)(e) or (E)(4) of section 2929.14, or division (H) of section 2929.20 of the Revised Code, whichever, if any, is relevant; (b) That the sentence is otherwise contrary to law."

After the Ohio Supreme Court's decision in *State v. Foster*, 109 Ohio St.3d 1, 2006 Ohio 856, 845 N.E.2d 470, a trial court is not required to provide its reasons for imposing the maximum sentence provided it falls within the statutory range.  The court is only required to consider the applicable felony sentencing statutes that delineate the purposes of sentencing and factors that demonstrate the serousness of the crime and the likelihood of recidivism.  *State v. Polick* (1995), 101 Ohio App.3d 428, 655 N.E.2d 820.

Appellant was convicted of rape, kidnapping, and gross sexual imposition of a 13-year-old girl.  The victim was the daughter of appellant's girlfriend and, at the very least, she was entitled to trust appellant as an adult member of her household.  While he may not have left external physical scars on the victim, the victim's own testimony supports a finding that she was afraid of appellant and only acquiesced to his demands out of fear.

During sentencing, the court stated on the record that it had considered the purposes and principles of sentencing, as required by the sentencing statutes.  Furthermore, the sentence imposed by the court was within the statutory range; therefore, we overruled appellant's fourth assignment of error.

These allegations of violation of state law fail to rise to the level of a denial of fundamental fairness and, therefore, are not cognizable in federal habeas corpus.  Petitioner has failed to articulate what the erroneous evidence was that he claims the sentencing court relied upon, and this Court has previously determined that there was sufficient evidence produced at trial to convict petitioner.  In addition, the appellate court found the sentences to have been within the statutory range and stated that the trial court had fulfilled its requirements under the sentencing statutes.  Even if this claim was

17

to be considered, this Court would not find that the decision of the state appellate court on the foregoing matters of state law was either objectively unreasonable or that it involved an unreasonable application of federal law.  That being so, petitioner's final claim for relief must fail.

In light of all the foregoing it is concluded that no claim of constitutional violation has been presented requiring further proceedings prior to disposition on the merits, and it is, therefore, recommended that the petition be dismissed without further proceedings.


s/DAVID S. PERELMAN
United States Magistrate Judge


DATE:    February 9, 2010


## OBJECTIONS

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).